NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CYNTHIA MARIA UQDAH, | Civil Action No. 14-6367 (SDW) (SCM) |
| Plaintiff, | |
| v. | OPINION |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | |
| | September 21, 2015 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court are Cynthia Maria Uqdah ("Plaintiff" or "Uqdah") and Unum Life Insurance Company of America's ("Defendant" or "Unum") Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Jurisdiction and venue are proper in this Court under 28 U.S.C. § 1441 and 28 U.S.C. § 1391(b), respectively. This motion is decided without oral argument as permitted under Federal Rule of Civil Procedure 78. For the reasons that follow, this Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff resides in Oak Lawn, Illinois, and was employed by Ulmer & Berne, LLP ("Employer") as a legal secretary at all relevant times. (Am. Compl. ¶¶ 17–18.) Defendant is an insurance company headquartered in New Jersey. (*Id*. ¶ 20.) Defendant issued a group disability insurance policy to Plaintiff's employer on October 1, 2005 under policy number 118962 001 (the "Policy"). (*See* Hern Declaration ("Hern Decl.") Ex. A).

On October 1, 2013, Plaintiff submitted a claim for total disability benefits under the Policy due to "spinal stenosis" and specified her work end date as June 28, 2013. (*Id*.) Plaintiff claimed that she could no longer perform her professional duties because she experienced "pain and uncomfortability when walking [and] sitting[]" as well as overall weakness in her back and hips. (*Id*.) According to Plaintiff's employer, as a legal secretary, Plaintiff was required to file documents, which generally requires "bending, kneeling or stooping[,]" and "lift[ing]/carry[ing] files, books, reams of paper, 3-ring binders, etc. up to 10 pounds in weight." (*Id*.)

Although Plaintiff visited the emergency room on July 5, 2013, about a week after she stopped working, with complaints of nausea and dizziness, she first self-reported low back pain radiating to both legs and pelvic pain on July 19, 2013, three weeks after she left work. (Defendant's Statement of Undisputed Facts ("Def.'s SUMF") ¶ 26.)

Plaintiff's initial claim form included a statement executed by her internist, Jerome Antony, M.D. ("Dr. Antony"), on September 26, 2013. (*Id*.) Dr. Antony reported that while Plaintiff could "occasionally" sit, stand, and walk, she could "never" climb, twist, bend, stoop, reach above shoulder level, operate heavy machinery, or lift up to ten pounds. (*Id*.) Consequently, Dr. Antony restricted Plaintiff from physical activity, sitting or walking for long periods of time, and lifting and carrying heavy items. (*Id*.)

Under the Policy, a finding of disability results if there is evidence that the claimant is (1) "limited from performing the material and substantial duties of [his or her] regular occupation due to [] sickness or injury;" and (2) has a "20% or more loss of [his or her] indexed monthly earnings due to the same sickness or injury." (*Id*.) "Material and substantial duties" are defined under the Policy as those duties that "are normally required for the performance of your regular occupation [] [which] cannot be reasonably omitted or modified." (*Id*.)

To facilitate its review of Plaintiff's disability claim, Defendant requested and received medical records from Plaintiff's treating physicians. The following is a summary of those medical records:

Plaintiff's internist, Dr. Antony noted that Plaintiff "self-reported nausea, weakness, and dizziness commencing five days prior and lower abdominal pain" on July 5, 2013. (*Id.*) On July 19, 2013, Dr. Antony noted that Plaintiff self-reported "[l]ow back pain radiating to both legs [and p]elvic pain." (*Id.*) He also noted that Plaintiff showed symptoms of spinal stenosis, hypertension, hypothyroidism, and hypercholesterolemia. He prescribed Norco and Flexeril. (*Id.*) On August 9, 2013, Dr. Antony prescribed Plaintiff an increased dosage of Synthroid for the treatment of hypothyroidism. (*Id.*) Lastly, Dr. Antony's notes from a September 24, 2013 office visit show that Plaintiff complained of lumbar radicular pain. (*Id.*)

Plaintiff visited gynecologist, Dr. Cheryl Wolfe ("Dr. Wolfe") on July 10, 2013. Treatment notes from that visit show that Plaintiff complained that she had been experiencing pelvic pain for two to three weeks. (*Id.*) Plaintiff told Dr. Wolfe that she learned she had an ovarian cyst during an emergency room visit the prior weekend. (*Id.*) A July 12, 2013 MRI of Plaintiff's pelvis revealed a small non-enhancing left ovarian cyst, normal appearance of the uterus. (*Id.*) Dr. Wolfe did not impose any restrictions or limitations on Plaintiff. (*Id.*)

Dr. Javad Hekmatpanah, M.D. FACS, FAAN ("Dr. Hekmatpanah"), a neurosurgeon, examined Plaintiff and reported that:

> On examination, [Plaintiff] is able to walk but does so cautiously. [Plaintiff] is able to lie down on the examining table and turn from side to side, but she does that with some discomfort. Leg raise is limited on the right side. Unable to raise her leg straight but when [Plaintiff] bends it she can. On the left side, [Plaintiff] could raise her leg to about 90 degrees. The quadriceps muscles are strong on both sides. The flexion and extension of the knees is strong. Flexion and extension are strong. Reflexes are hypoactive. [Plaintiff] has

3

>   decreased sensation on the lateral side of her right leg and lateral side of the thigh on the right side. The sensation on the buttocks is normal. [Plaintiff] indicates pain in the lower lumbar area.
>
>   (*Id.*)

Dr. Hekmatpanah also noted that Plaintiff did not exhibit any palpable mass in her abdomen, had normal skin color, and no swelling of the extremities. (*Id.*)

On November 22, 2013, Plaintiff's total disability claim was reviewed by a multi-disciplinary board of medical professionals including: Paula Newman (disability benefits specialist), Kim S. Walker (vocational rehabilitation consultant), Allison Trelegan, RN, BSN (clinical consultant), Dr. Collins (physician consultant), and Patty Holmquist (claims director). (*Id.*). The review board recommended contacting Plaintiff's primary physician, Dr. Antony, to clarify his opinion regarding Plaintiff's restrictions and limitations. (*Id.*)

Based on the review board's recommendation, on December 6, 2013, Defendant's physician consultant, Dr. Edward T. Collins, DO ("Dr. Collins"), a board certified psychiatrist and neurologist, contacted Dr. Antony. (*Id.*) In his correspondence to Dr. Antony, Dr. Collins stated that he believed Plaintiff was capable of performing the full-time demands of her position as a legal secretary. (*Id.*) Dr. Antony disagreed with Dr. Collins's assessment and advised Defendant to refer the questionnaire regarding Plaintiff's functional capacity to Plaintiff's neurosurgeon, Dr. Hekmatpanah, which Dr. Collins did. (*Id.*) Dr. Hekmatpanah, however, did not respond to Defendant's request for his opinion, nor did he otherwise impose any restrictions and/or limitations on Plaintiff. (SUMF ¶ 40.)

On January 2, 2014, Dr. Collins reviewed the administrative record and issued a report in which he concluded that "[t]he medical records do not document evidence of physical findings, diagnostic evaluations, treatment decisions, or other indicators that the claimant was precluded

4

from performing the use of up to 10 lbs of force occasionally, primarily seated with brief periods of stand and/or walk from 7/1/13 through 9/28/13 and beyond." (*Id.*)

Defendant referred the matter to Joseph Sentef, M.D., M.B.A. ("Dr. Sentef"), to assess the conflicting opinions of Defendant's reviewing physician, Dr. Collins, and Plaintiff's attending physician, Dr. Antony, and issue an independent analysis of the records. (*Id.*) Upon review of the administrative file, Dr. Sentef concluded that Plaintiff "would be able [to] perform a full-time sedentary occupation as documented by [Dr. Collins]." (*Id.*)

Plaintiff began a course of physical therapy on September 16, 2013 at Advocate Christ Medical Center ("Medical Center"). (*Id.*) On February 11, 2014, Dr. Collins and Dr. Sentef reviewed the Medical Center's records regarding Plaintiff's physical therapy and each prepared addendum reports therefrom. Neither Dr. Collins nor Dr. Sentef changed their previous opinion that Plaintiff was not disabled as defined by the Policy. (*Id.*) On February 13, 2014, Defendant's Quality Compliance Consultant, Bethany Emery, reviewed Plaintiff's claim and the administrative record, and concluded that Plaintiff would be able to sufficiently perform her occupation. (*Id.*) Thereafter, on February 14, 2014, Defendant informed Plaintiff of its determination that she was not disabled as defined by the Policy, and is therefore ineligible for long-term disability benefits. Defendant cited the opinions of Dr. Collins, Dr. Sentef, and Bethany Emery as the basis for denying Plaintiff's claim. (*Id.*)

On April 23, 2014, Plaintiff, with the assistance of counsel, appealed Defendant's initial claim denial. (*Id.*) In support of her appeal, Plaintiff submitted an April 8, 2014 MRI of her lumbar spine. (*Id.*) The MRI report indicated the following:

> Multilevel degenerative disk disease resulting in severe central canal stenosis at L4-5 and multilevel neural frontal narrowing. Severe facet degenerative disease at L5-S1 with surrounding inflammation demonstrated on sagittal STIR images.

5

*Id*.

On September 2, 2014, Nurse Angela Malan-Elzawahry, R.N. ("Nurse Malan-Elzawahry") issued a medical review report. (*Id*.) After detailing Plaintiff's medical and treatment history, Nurse Malan-Elzawahry reported that the conditions noted in Plaintiff's medical history are "stable with treatment and have not been noted in association with active symptoms or [restrictions and limitations]." (*Id*.) Then, on September 3, 2014, neurological surgeon Charles Sternbergh, M.D. ("Dr. Sternbergh") issued a report in which he too concluded that Plaintiff could sufficiently perform her occupational duties because it involves mostly sitting, "which is tolerated well by most patients with lumbar stenosis." (*Id*.) In addition to these two reports, Defendant sought the opinion of G. Shannon O'Kelley, M. Ed., CRC, a senior vocational rehabilitation consultant. O'Kelley concluded that Plaintiff can perform the "material and substantial duties of [her] occupation . . . with the restrictions and limitations presented." (*Id*.)

On September 12, 2014, Defendant issued its final determination denying Plaintiff's appeal claim for total disability benefits. (*Id*.) Defendant's final determination letter identifies all of the evidence presented in the administrative record. The letter also explains how the evidence was reviewed and considered. (*Id*.) Through a motion for summary judgment, Plaintiff now seeks an award of total disability benefits under the Policy from this Court pursuant to 29 U.S.C. § 1132. (*See* ECF No. 11.) Defendant opposes the motion. Defendant also moves for summary judgment on its denial of Plaintiff's disability benefits claim. (*See* ECF No. 10.)

## II. LEGAL STANDARD

### a. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *Hip Heightened Indep. & Progress, Inc. v. Port Auth. of New York & New Jersey*, 693 F.3d 345, 351 (3d Cir. 2012). Accordingly, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks*, 204 F.3d at 105 n. 5 (citing *Anderson*, 477 U.S. at 249); *Big Apple BMW v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### b. Standard of Review for Denial of a Claim for Disability Benefits under ERISA

The denial of a claim for disability benefits, if challenged under 29 U.S.C. § 1132(a)(1)(B) ("ERISA"), is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the ERISA policy terms bestow discretionary authority upon the policy administrator to determine benefits eligibility, the decision to deny benefits must be upheld unless it is "arbitrary and capricious." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120–21 (3d Cir. 2012). "Likewise, when an administrator acts pursuant to her authority to construe the terms of the plan . . . or to act as a finder of facts . . . [the Court will] also apply the arbitrary and capricious standard when reviewing those interpretations and factual findings." *Id*. (citations omitted.) The Court may overrule an administrator's decision as arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. *Miller v. American Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffman-Law Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

### III. DISCUSSION

The Policy at issue explicitly states that "[w]hen making a benefit determination under the [P]olicy, [Defendant] has discretionary authority to determine [] eligibility for benefits and to interpret the terms and provisions of the [P]olicy." Hern Decl. Ex. A.

As earlier stated, where the ERISA policy leaves the determination of benefits eligibility to the policy administrator's sound discretion, the decision to deny benefits must be upheld unless it is "arbitrary and capricious." *Fleisher*, 679 F.3d at 120–21. An administrator's decision will be deemed arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. *Miller*, 632 F.3d at 845.

In reviewing a policy administrator's denial of benefits, the Court weighs both structural and procedural factors. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525–26 (3d Cir. 2009) (citing *Metropolitan Life Ins. Co. v. Glenn*, 54 U.S. 105 (2008)); *Miller*, 632 F.3d at 844–45. The structural inquiry focuses on whether a conflict of interest existed. *Id*. (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007); *Estate of Schwing*, 562 F.3d at 526 ("[I]t is clear that courts should take account of several different considerations of which a conflict of interest is one, and reach a result by weighing all of those considerations."). "The procedural inquiry focuses on how the administrator treated the particular claimant." *Post*, 501 F.3d at 162.

The parties agree that a conflict of interest exists here. *See* Defendant's Motion for Summary Judgment ("Def.'s Mot. Summ. J."), p. 13; Plaintiff's Motion for Summary Judgment ("Pl.'s Mot. Summ. J."), p. 9.  In *Glenn*, the Supreme Court held that there is a presumed conflict of interest where an insurance company both reviews claims and pays out benefits. 554 U.S. at 106.  In the case at bar, because Defendant, an insurance company, issued the subject policy and serves as its administrator, a conflict of interest exists. The existence of a conflict of interest, however, is not dispositive. *Estate of Schwing*, 562 F.3d at 525–27.  The significance of the conflict of interest factor depends on the circumstances of each particular case; as such, a policy administrator-insurance company may still be found to not have abused its discretion, even though it issued the subject policy. *Glenn,* 554 U.S. at 106.

Next, the Court reviews various procedural factors present in the administrator's decision-making process to determine if the conclusion was arbitrary and capricious. *Miller*, 632 F.3d at 845. "The procedural inquiry focuses on how the administrator treated the particular claimant." *Post*, 501 F.3d at 162. The factors to be weighed by the Court include:

> a reversal of a benefits determination without additional evidence, (2) a disregard of opinions previously relied upon, (3)

9

> a self-serving selectivity in the use of evidence or reliance on self-serving paper reviews of medical files, (4) a reliance on the opinions of non-treating physicians over treating physicians without explanation, (5) a reliance on inadequate information or incomplete investigation, (6) failure to comply with the notice requirements of Section 504 of ERISA, (7) failure to analyze all relevant diagnoses, and (8) failure to consider plaintiff's ability to perform actual job requirements.

*Kosiba v. Merck & Co.*, 2011 WL 843927, at *10 (D.N.J. March 7, 2011) (citing *Miller*, 632 F.3d at 849–56); *see generally Simon v. Prudential Ins. Co. of America*, 2011 WL 2971203 (D.N.J. July 20, 2011). Here, despite the existence of a conflict of interest, this Court finds that Defendant's denial of Plaintiff's total disability claim was neither arbitrary nor capricious.

The first of the procedural factors, whether Defendant reversed a benefits determination without additional evidence, weighs in neither party's favor as Plaintiff's disability claim was never approved in the first instance.

The second factor weighs in Defendant's favor, as Defendant did not disregard in a later review, an opinion it previously relied upon. In fact, throughout its review of Plaintiff's disability claim, Defendant steadfastly rejected Dr. Antony's opinion regarding Plaintiff's disability, which is the sole medical opinion that unequivocally supports Plaintiff's disability claim. By contrast, Defendant obtained countervailing opinions from numerous medical professionals, some of whom examined Plaintiff personally, to support its position. Critical to the evaluation of this factor, the Supreme Court has held that:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Therefore, this factor weighs in Defendant's favor.

The third factor, whether Defendant placed undue reliance on self-serving paper reviews of medical records, weighs in Defendant's favor as there is ample evidence that Defendant relied on opinions issued by both examining and consulting physicians in equal measure. Furthermore, the Court is not mandated, nor are plan administrators required, to accord controlling weight to the opinions of medical professionals who personally examined and treated Plaintiff. *See generally Black and Decker*, 538 U.S. 822 (holding that ERISA does not require a Plan Administrator to per se accord more weight to the opinion of a treating physician).

The fourth factor, which probes whether the Plan Administrator relied on the opinions of non-treating physicians over treating physicians without explanation, skews in Defendant's favor.[1] It is clear on the record that Defendant's rejection of Dr. Antony's opinion was adequately explained and sufficiently supported with countervailing assessments and opinions of other physicians who examined Plaintiff. For instance, in adjudicating Plaintiff's appeal, Defendant reviewed the analyses and conclusions of a nurse, a neurological surgeon, and a senior vocational rehabilitation consultant. Each of these medically certified consultants independently concluded that Plaintiff was able to perform her occupational duties and does not qualify for disability benefits.

Similarly, in reviewing Plaintiff's initial claim, to resolve the conflicting opinions of Plaintiff's treating physician and Defendant's physician consultant, Defendant referred the matter

---

[1] Plaintiff does not address factors five through eight, namely, (5) reliance on inadequate information or incomplete investigation, (6) failure to comply with the notice requirements of Section 504 of ERISA, (7) failure to analyze all relevant diagnoses, and (8) failure to consider plaintiff's ability to perform actual job requirements, nor does she contend that they weigh in her favor. This Court does not find these factors probative to the resolution of this matter and will not discuss them in further detail.

to Dr. Sentef for an independent review. Dr. Sentef determined that Plaintiff could perform her occupational duties as a legal secretary. Notwithstanding, the Plan Administrator's finding that Dr. Antony's opinion was unpersuasive in light of the totality of the medical evidence does not necessarily imply that Defendant improperly valued the opinions of non-treating physicians over that of Dr. Antony. *See Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 257–58 (3d Cir. 2004) (holding that where the professional disagreement between the review board's consulting physicians and claimant's physicians appears grounded in differing conclusions based on a full review of the medical record, there is no reason to give more weight to the treating physician's conclusion(s)).

Lastly, Plaintiff's reliance on *Stith v. Prudential Ins. Co. of America* is misplaced. 356 F.Supp.2d 431 (2005). In *Stith*, the defendant relied *solely* on the conclusion of one physician consultant who disregarded the claimant's medical records and the opinions of the claimant's treating physicians. *Stith*, 356 F.Supp.2d at 439–41. Here, Defendant based its decision upon the substantiated conclusions of multiple physicians and consultants while Plaintiff relied upon the opinion of one treating physician.

In view of Defendant's full and fair review of Plaintiff's initial disability claim and appeal from the denial of that claim, this Court concludes that Defendant's decision to deny Plaintiff's claim for disability benefits is supported by objective and credible medical evidence, and is neither arbitrary nor capricious. *See Bluman v. Plan Adm'r and Trustees for CAN's Integrated Disability Program*, 491 Fed.Appx. 312, 315–16 (3d Cir. 2012). As such, Plaintiff's motion for summary judgment is **DENIED** and summary judgment is **GRANTED** in Defendant's favor.

### IV. CONCLUSION

For the reasons discussed herein, Plaintiff's motion for summary judgment (ECF No. 11) is **DENIED** and Defendant's motion for summary judgment (ECF No. 10) is **GRANTED**. An appropriate order will be filed with this Opinion.

s/ <i>Susan D. Wigenton</i><br>
<b>SUSAN D. WIGENTON</b><br>
<b>UNITED STATES DISTRICT JUDGE</b>

Orig: Clerk
cc:  Parties
     Steven C. Mannion, U.S.M.J.